1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**James C. Mahan**
**U.S. District Judge**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

THOMAS KNICKMEYER,

                Plaintiff(s),

   v.

STATE OF NEVADA *ex rel* EIGHTH
JUDICIAL DISTRICT COURT, et al.,

               Defendant(s).

Case No. 2:14-CV-231 JCM (PAL)

ORDER

Presently before the court is defendant the State of Nevada *ex rel.* Eighth Judicial District Court's motion for summary judgement. (Doc. # 41). Plaintiff Thomas Knickmeyer filed a response (doc. # 49), and defendant filed a reply. (Doc. # 52).

**I.    Background**

This is an action alleging racial hostility, discrimination, and retaliation by the Eighth Judicial District Court ("EJDC") against plaintiff Thomas Knickmeyer under Title VII of the Civil Rights Act of 1964 ("Title VII"). Mr. Knickmeyer alleges that he was subjected to a racially hostile work environment at EJDC, suffered racial discrimination at EJDC, and was terminated from EJDC in retaliation for his claims of racial discrimination.

Mr. Knickmeyer, who is Caucasian, was an employee of the EJDC for approximately eighteen years from July of 1995 through November 14, 2013, when the EJDC officially terminated Knickmeyer. From 1995 until March 5, 2012, Knickmeyer was employed as a judicial marshal for an EJDC judge. On March 5, 2012, after the judge Knickmeyer worked for retired, Mr. Knickmeyer began work as an administrative marshal for the EJDC.[1]

---

[1] Administrative and judicial marshals are both deputy marshals. A judicial marshal is appointed by a particular judge and serves at that judge's pleasure. An administrative marshal is a deputy marshal who is not appointed by a particular judge, but instead works for the administrative branch of the EJDC, mostly providing security services at the Clark County Courthouse.

Shortly after Knickmeyer began work as an administrative marshal in 2012, he became the subject of multiple disciplinary proceedings and third-party complaints. On May 17, 2013, Knickmeyer received a written reprimand resulting from an investigation of complaints that Knickmeyer was sleeping or appeared to be sleeping during a calendar call for which he was filling in as a judicial marshal on September 18, 2012. The investigation also involved allegations that Knickmeyer made inappropriate misogynistic remarks to the judge's law clerk, a female, shortly before the same calendar call.

Knickmeyer was also investigated for allegedly making racially charged comments to one of his coworkers. The alleged comments were made to African American administrative marshal Ron Brooks. While on duty running the metal detectors at the courthouse on September 24, 2012, approximately one week after the incidents at calendar call, Knickmeyer allegedly made several racially charged comments to Mr. Brooks. After the second such comment, Brooks became upset, verbally confronted Knickmeyer about the comment, and reported the incident to his supervisor, Sergeant Dana Saunders.

The EJDC then received a complaint regarding Mr. Knickmeyer's allegedly unlawful touching of an EJDC detainee on November 15, 2012. After the detainee filed a complaint, the EJDC Marshals Division's Internal Affairs Department ("IAD") opened an investigation. Ultimately, the investigation resulted in findings that Knickmeyer unnecessarily touched the detainee by "tapping" him on the face or head.

Finally, on January 7 and 8, 2013, Knickmeyer made statements and took actions that compelled another coworker, Deputy Marshal David Ellis, to submit a written report regarding those actions. First, on January 7, Knickmeyer use choice, colorful language about the above-described IAD investigations into his conduct and made vulgar and disparaging comments regarding the EJDC and its administration. He intimated to Mr. Ellis that he believed he would be fired as a result of the investigation into his discriminatory conduct.

On January 8, Knickmeyer continued to give Mr. Ellis his unsolicited thoughts about the administration of EJDC. Specifically, he made a series of statements about his supervisor, Lieutenant Steven Moody. Knickmeyer questioned Moody's character, telling Ellis that Moody had lied on his employment application. He then showed Ellis a copy of a civil lawsuit initiated in

---

Administrative marshals follow a chain of command, unlike judicial marshals, who report only to their judge.

California against Mr. Moody that was on his phone. He informed Ellis that he didn't like Moody and that he planned to show other EJDC employees the lawsuit.

Shortly thereafter, Ellis and Knickmeyer processed a female attorney at their security line at the courthouse. Ellis was monitoring the conveyor belt, and Knickmeyer was working at the x-ray video monitor. The attorney placed her bag on the conveyor. After the bag had run through the x-ray machine, Knickmeyer told Ellis to check the bag, and he did. Ellis then gave the bag to Knickmeyer to run it again. Despite finding nothing suspicious, Knickmeyer ran the bag a total of at least three times without explaining to Ellis what had made him suspicious. Ellis reported that nothing on the video monitor looked suspicious to him.

After the attorney took her bag and walked away, Knickmeyer informed Ellis that she was the same attorney who had reported him for making the misogynistic comments discussed above, referring to her by a certain vulgarity. This was the same report that caused the IAD investigation Knickmeyer had complained to Ellis about the day before. Mr. Ellis believed that Knickmeyer had run the attorney's bag three times because of his animus toward the attorney and not because of a legitimate security concern.

On January 9, 2013, Ellis wrote a report about Knickmeyer's behavior on the previous two days. The matter was then assigned to Thomas Newsome, a deputy marshal investigator at IAD, for an official investigation on January 14, 2013. Knickmeyer was served with notice of the investigation on May 20, 2013. That day, he was placed on administrative leave pending an investigation of the January 7, and January 8, 2013, conduct.

On October 23, 2013, Knickmeyer was given notice of termination proceedings and continued on administrative leave pending a termination hearing. The decision to recommend termination was made by Steve Grierson, Bob Bennett, and Edward May.[2] The notice stated that the termination recommendation was based on his misconduct on January 7 and 8, 2013. It also informed Knickmeyer that the EJDC had considered his prior disciplinary history and the third-party complaint regarding his misogynistic comments, which was being investigated at the time, in reaching its termination decision. The EJDC officially terminated Mr. Knickmeyer, after a hearing, on November 14, 2013.

---

[2] Mr. Grierson is the EJDC's executive officer, Mr. Bennett is its director of security, and Mr. May is its human resources manager.

James C. Mahan
U.S. District Judge

On January 10, 2013, one day after Mr. Ellis filed his report about Knickmeyer's conduct, Knickmeyer lodged complaints about Mr. Moody with Mr. May for the first time. Knickmeyer's complaint alleged that Moody had engaged in a course of objectionable or discriminatory behavior. Amongst other things, Knickmeyer claims that Moody, an African American man, had discriminated against him on the basis of race by giving favorable treatment to African American marshals over him on multiple occasions. Knickmeyer received notice on June 18, 2013, that a Clark County Office of Diversity ("OOD") investigation of his complaint resulted in a determination that the issues raised in his complaint did not constitute unlawful employment discrimination.

On July 17, 2013, Knickmeyer filed a charge of discrimination with the Nevada Equal Rights Commission ("NERC"). The complaint contained the following allegations: (a) that he had been treated differently than his African American coworkers with respect to receipt of a light duty assignment; (b) that Mr. Moody denied Knickmeyer's requests for training and approved requests for training for two African American marshals; (c) that Moody referred to a group of African American officers as the "soul patrol," (d) that Moody once made the comment, "if you're white, you're not right," (e) Mr. Moody allowed an African American marshal to hug and kiss female coworkers on the cheek when greeting them, but would discipline a Caucasian marshal for doing the same; and (f) that Moody promoted Dana Saunders to sergeant over more qualified Caucasian and Hispanic applicants. Mr. May acknowledges that he and Mr. Grierson were at least generally aware that Knickmeyer had filed the NERC charge of discrimination at the time they participated in the decision to terminate Knickmeyer.

## II.     Legal Standard

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

**III.     Discussion**

Defendant argues that summary judgment in its favor on each of Knickmeyer's Title VII claims is appropriate because (1) Knickmeyer was not subjected to a racially hostile work environment but rather created one through his racial and misogynistic comments; (2) Knickmeyer's claims of racial discrimination are speculative and factually unsubstantiated; and (3) Knickmeyer's termination from his employment resulted from serious misconduct and not from any improper actions by the EJDC. (Doc. # 41 at 6).

Knickmeyer argues that there are genuine issues of material fact with respect to his Title VII hostile work environment claim and his claim that he suffered unlawful retaliation when EJDC terminated his employment in October, 2013. Plaintiff's opposition did not contain points and authorities in opposition to defendant's argument that his claims of racial discrimination are speculative and factually unsubstantiated. Knickmeyer also objects to the admissibility of several of the exhibits submitted by EJDC in support of its motion.

A.     *Admissibility of EJDC's exhibits*

Knickmeyer argues that certain exhibits submitted by EJDC constitute inadmissible hearsay and requests that the court strike the exhibits. *See* FED. R. EVID. 801, 802. Specifically, Knickmeyer contends that the decisions from his pre and post-termination hearings (*see* doc. 41-7), as well as his arbitration award decision (*id.*), all of which were resolved in the EJDC's favor, are inadmissible as hearsay. He also argues that the exhibits are more prejudicial than probative. *See* FED. R. EVID. 403.

"The Federal Rules of Evidence start from the premise that [arbitral decisions] are generally admissible 'unless the sources of information or other circumstances indicate a lack of trustworthiness.'" *Graef v. Chemical Leaman Corp.*, 106 F.3d 112, 118 (5th Cir. 1997) (quoting Fed. R. Evid. 803(6), (8)(C)). "The burden of establishing the untrustworthiness of such documents is on the opponent of the evidence." *Id.* (citing multiple cases including *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir. 1988)). In the Title VII context, the Supreme Court has acknowledged that an "arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974). Factors to be considered in determining the weight to be accorded the arbitration decision include the existence of provisions in the collective bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitration, the adequacy of the record with respect to the issue

James C. Mahan
U.S. District Judge

of discrimination, and the special competence of particular arbitrators. *Id.* at 60, n. 21. The court may also give evidentiary weight to an arbitral decision, when the issue is solely one of fact, specifically addressed by the parties, and decided by the arbitrator on the basis of an adequate record. *Id.*

The court finds that the termination and arbitration awards are admissible under *Alexander* and Federal Rules of Evidence 803(6) and 803(8)(c). *See* 415 U.S. at 60, n. 21. Knickmeyer has not carried his burden of showing that the sources of information are not trustworthy. In fact, he has not put forth any arguments questioning the trustworthiness of the documents, instead focusing on a misplaced hearsay argument.

The exhibits are highly probative and any prejudicial effect they have against Knickmeyer is not "unfair" merely because it weighs in EJDC's favor. *Cf.* Fed. R. Evid. 403. There is no evidence that that the decisions were made on an inadequate record or that the parties' collective bargaining agreement does not conform to Title VII. *See Alexander*, 415 U.S. at 60, n. 21. The court will deny Knickmeyer's request to strike the exhibits and consider the evidence contained in them in resolving the motion.

### B.     The hostile work environment claim

A hostile work environment claim may exist when the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *See also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

To prevail on a claim of hostile work environment based on race, a plaintiff must establish: "(1) that he was subjected to verbal or physical conduct because of his race; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (quoting *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998).

A hostile work environment is not created when an employee is simply caused offense based on an isolated comment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) (citing *Nichols v. Azteca Rest. Enterprises*, 256 F.3d 864, 872 (9th Cir. 2001)). However, it is sufficient if the hostile conduct "pollutes the victim's workplace, making it more difficult for him to do his

James C. Mahan
U.S. District Judge

- 7 -

job, to take pride in his work and to desire to stay in his position. *Id.* A plaintiff is required to establish that his workplace was both objectively and subjectively hostile. *Nichols*, 256 F.3d at 871-72.

In the context of summary judgment review, the district court should consider all of the circumstances of a hostile work environment claim, "including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance." *Surrell v. California Water Service Co.*, 518 U.S. 1097, 1109, (9th Cir. 2008) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

EJDC argues that Knickmeyer has failed to offer credible evidence showing that he was subjected to a racially hostile work environment sufficiently severe to alter the conditions of his employment under Title VII. *See Celotex*, 477 U.S. at 323–24; *Kang*, 296 F.3d 817. It contends that Knickmeyer's self-serving deposition and interrogatory responses are insufficient to establish hostility with respect to Mr. Moody's racially charged statements. Further, Knickmeyer lacks personal knowledge of the facts underlying his discrimination complaints. Finally, defendant argues that Knickmeyer's failure to report the alleged discrimination acts in any proximity to their occurrence undermines any claim that they interfered with his work performance or conditions of employment.

Knickmeyer's hostility claim is based on the following alleged comments and conduct: (i) Moody's references to the "soul patrol" and alleged statement that "if you're white, you're not right;" (ii) denial of Knickmeyer's requests for training; (iii) denial of Knickmeyer's requests for light duty assignment in 2013; (iv) Lieutenant Moody's seeking out of Title VII complaints *against* Knickmeyer; (v) wrongful accusations that Knickmeyer made racially offensive comments; and (vi) the existence of a work environment in which African American marshals were treated more favorably than other marshals by Moody. (*See* doc. # 52 at 20–21).

The court finds that Knickmeyer has failed to establish the existence of a racially hostile work environment. First, Knickmeyer has failed to establish that Moody's references to African American marshals as the "soul patrol" is either objectively or subjectively offensive or hostile to him, as a Caucasian. (*See* doc. # 41-7 at 216–20). *Cf. Nichols*, 256 F.3d at 871-72. Further, Knickmeyer conceded in his deposition that he did not have any evidence to support his theory that "soul patrol" officers received favorable treatment. (*See* doc. # 41-8 at 221).

James C. Mahan
U.S. District Judge

- 8 -

Similarly, even assuming *arguendo* that Moody made the comment "if you're white, you're not right,"[3] Knickmeyer failed to report the incident, maintaining that he thought doing so would have been pointless, but failing to produce any evidence supporting that belief. (*See* doc. # 41-7 at 273–74). Knickmeyer's failure to report the incident undermines any argument that he found the comment to be subjectively hostile or that it interfered with his work performance.

Finally, again assuming that both of these incidents occurred and caused Knickmeyer offense, they constitute isolated instances. A hostile work environment is not created when an employee is simply caused offense based on an isolated comment. *See McGinest*, 360 F.3d 1103. Knickmeyer's "workplace [was not] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Forklift Systems, Inc.*, 510 U.S. at 21.

Mr. Knickmeyer's allegations of racial discrimination are similarly unfounded. Clark County's Office of Diversity ("OOD") investigated Knickmeyer's claims that he was (a) denied training requests and (b) denied requests for light duty assignment, and (c) that those opportunities were instead offered to African American marshals. The OOD found that the allegations lacked merit. (Doc. # 39-4 at 26–27). Knickmeyer conceded he has no evidence to refute those findings during his deposition. (*See* doc. # 41-8 at 206–07, 211, 216, and 261).

Mr. Knickmeyer's assertion that Mr. Moody contrived Title VII complaints *against* Moody is based on EJDC employee Patricia Litt's alleged statements that Mr. Moody was out to get Knickmeyer and that Knickmeyer should watch his back. First, Ms. Litt's statements constitute inadmissible hearsay, which the court cannot consider. *See* FED. R. CIV. P. 56(c)(1)(B); FED. R. EVID. 801, 802. Knickmeyer failed to respond to defendant's objection to their admissibility. Moreover, even if the court assumes she did make the statements, they do not speak to whether Moody sought out complaints against Knickmeyer. Moreover, the complaints against Knickmeyer for racial and misogynistic comments were lodged in 2012, before Ms. Litt allegedly made these statements on January 10, 2013. There is no evidentiary basis for Knickmeyer's assertion that Moody sought out Title VII complaints against Knickmeyer.

Finally, Knickmeyer argues circuitously that he was subjected to racial hostility based on the OOD's investigation into complaints that he made racially charged and misogynistic

---

[3] Moody denies making the comment. (*See* doc. # 39-4 at 26).

comments. The evidence indicates that these complaints *against* Knickmeyer for racial and misogynistic comments were well-founded and substantiated by a reliable administrative record. (*See* doc. # 39-3 at 6, 9). There is no evidence that Moody had any involvement with the complaints beyond receiving a complaint, directing it to EJDC human resources, and collecting reports as instructed by human resources. (*See id.* at 2). There is no basis for Knickmeyer's claims that the investigations resulting from his own discriminatory conduct constitute racial discrimination against him.

Plaintiff provides no evidence in support of his claim that he worked in an environment in which African American marshals were treated more favorably than other marshals by Moody. In sum, defendant has demonstrated that Knickmeyer has failed to present evidence sufficient to show that he suffered from pervasively hostile discriminatory conduct sufficient to "pollute [his] workplace, making it more difficult for him to do his job, to take pride in his work[,] and to desire to stay in his position." *Nichols*, 256 F.3d at 871–72; *see also Forklift Systems*, 510 U.S. at 21. In fact, the evidence suggests that Mr. Knickmeyer may have instead himself contributed to a hostile environment for his coworkers.

EJDC has demonstrated that it is entitled to summary judgment on Knickmeyer's hostile work environment claim.

C.     *The racial discrimination claim*

In its motion for summary judgment, EJDC argues convincingly that (1) Mr. Knickmeyer's discrimination claims were speculative at the time they were made; (2) that they proved to be factually unsubstantiated after they were investigated; and (3) that there was no evidence to satisfy the legal elements of his discrimination claims. (*See* doc. # 41 at 20–37).

Defendant points out accurately that Knickmeyer has failed to offer any substantive opposition to those arguments in his response to the motion. (*See* doc. # 49). "The failure of the opposing party to file points and authorities in response to any motion shall constitute a consent to granting the same." D. Nev. 7-2(d). This failure-to-oppose rule does not apply solely to failure to file a physical document, but also to failure to assert in an opposition arguments that oppose those presented in the motion. *See, e.g., Duensing v. Gilbert*, 2013 WL 1316890 (D. Nev. Mar. 1, 2013) (failing to respond to defendant's arguments on the issue constituting consent to the granting of the motion); *Schmitt v. Furlong*, 2013 WL 432632 (D. Nev. Feb. 4, 2013) (failure to argue against substantive due process violations indicated consent to granting summary judgment); *Gudenavichene v.*

*Mortgage Elec. Registration Sys.*, 2012 WL 1142868 (D. Nev. Apr. 4, 2012) (plaintiff's failure to respond to any of the arguments raised in the motion to dismiss constituted consent to granting the motion)

However, a motion for summary judgment cannot be granted simply because the opposing party violated a local rule. *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949 (9th Cir. 1993)). Indeed, *Henry* held that "it is highly questionable in light of the standards of [FRCP] 56 that a local rule can mandate the granting of summary judgment for the movant based on a failure to file opposing papers where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact." *Henry*, 983 F.2d at 950 (citing *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 n. 1 (9th Cir.1976)).

Here, unlike in *Henry* and *Hamilton*, Knickmeyer did file opposing papers. The papers plaintiff filed simply fail to offer support for this particular claim. *Cf. Henry*, 983 F.2d at 950. Moreover, EJDC's motion *is* sufficient to support a motion for summary judgment and does not reveal a genuine issue of material fact. *Id.* Summary judgment will thus be granted in favor of EJDC on Knickmeyer's racial discrimination claim.

### D. The retaliatory termination claim

In order to make out a prima facie case of retaliation, the plaintiff must establish that (i) he undertook a protected activity under Title VII; (ii) his employer subjected him to an adverse employment action, and (iii) there is a causal link between those two events. *Vasquez v. City of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

To establish the causal link, plaintiff must show that his protected activity was a "but-for" cause of the alleged adverse action by the employer. *University of Tex. Sw. Med. Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013). "If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Ray*, 217 F.3d at 1240. "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.*

Knickmeyer asserts that his lodging of a complaint of racial discrimination with Mr. May on January 10, 2013, and filing of a charge of discrimination with the Nevada Equal Rights

James C. Mahan
U.S. District Judge

- 11 -

Commission ("NERC") in July of 2013, constitute protected activities, which is not in question. He argues that his October, 2013, notice of termination was an adverse employment action under Title VII, which EJDC does not contest.

Knickmeyer contends that the timing of his termination notice and proceedings in relation to his NERC charge, as well as the delay between his misconduct in January, 2013, and notice of termination in October, 2013, establish a causal connection between the protected activity and the adverse employer action. Specifically, he argues that the OOD, Mr. May, and Mr. Grierson (both of whom participated in the decision to terminate Knickmeyer) had actual notice of the NERC charge in August, 2013, well before the decision to terminate was made in October, 2013. Knickmeyer argues that his "minor" misconduct in January, 2013, did not justify a firing nearly ten months later in October, 2013.

Knickmeyer has not established the casual link between his protected action and the adverse EJDC action, an essential element of a Title VII retaliation claim. *See Vasquez*, 349 F.3d at 646. To establish the causal link, plaintiff must show that his protected activity was a "but-for" cause of the alleged adverse action by the employer. *Nassar*, 133 S.Ct. at 2533. Knickmeyer cannot do so.

The EJDC, as discussed above, has demonstrated that its decision to terminate Knickmeyer was based on a comprehensive investigative record of multiple grievances against him. The decision to terminate Knickmeyer is supported by three levels of grievance review. Hearing master Melissa De La Garza entered a written ruling, which sustained the first six of the seven allegations of misconduct against Knickmeyer and concluded that these findings warranted termination. (*Id.* at 304-314). These findings were adopted by Mr. Grierson on November 14, 2013, and Mr. Knickmeyer was terminated on that day. (*Id.* at 323–25). The post-termination hearing officer, Bonnie Bulla, found that the totality of Mr. Knickmeyer's conduct on January 8, 2013, warranted termination. (*Id.* at 315–22). The arbitration hearing officer, Arbitrator MacLean, found that the EJDC produced and admitted sufficient evidence to establish the allegations of misconduct by a preponderance of the evidence and that the EJDC had just cause to terminate Mr. Knickmeyer based on his actions. (*Id.* at 338–51). Based on this consensus, Mr. Knickmeyer cannot argue that the EJDC's decision to was based solely on a discriminatory motive, *cf. Nassar*, 133 S.Ct. at 2533, or that the decision to terminate him over progressive discipline was a pretext for racial discrimination.

James C. Mahan
U.S. District Judge

Knickmeyer argues that there are genuine issues of material fact with respect to (a) Mr. May's awareness that he filed a charge with NERC; (b) Mr. May's role in assisting the OOD to interview Moody; (c) and the fact that Mr. May, Mr. Bennett, and Mr. Grierson decided to terminate Knickmeyer mere weeks after the OOD sent its formal response regarding Knickmeyer's allegations to NERC, of which May had notice.

Even resolving all of these facts in the light most favorable to Knickmeyer, however, the court finds that he cannot establish the causal link. Plaintiff must do more than show that one of the three men involved in the decision to terminate him knew that he had filed charges against EJDC. This mere coincidence, by itself, cannot form the basis for a reasonable inference that the retaliatory motive was the but-for cause of the panel's determination to terminate Knickmeyer's employment.

Knickmeyer's arguments that the ten-month delay between his January misconduct and notice of his termination are unavailing. The evidence indicates that Mr. Knickmeyer himself was responsible for much of the delay. EJDC initiated its investigation into Knickmeyer on January 14, 2015. (Doc. # 41-1 at 280). On January 15, 2013, Knickmeyer took a leave of absence lasting four months until May 17, 2013. (*Id.* at 239–41). Upon returning to work, he was immediately placed on administrative leave pending the investigation on May 20, 2013. (*Id.* at 31). This adverse action indicating that EJDC took the investigation into Knickmeyer's misconduct seriously occurred months before he filed a discrimination charge with NERC in July, 2013.

Finally, and most tellingly, Knickmeyer's own testimony about the basis for his termination indicates that he believes he was fired for his own discriminatory behavior and not based on discrimination or retaliation. At his arbitration award hearing on September 11, 2014, seven months after this case was filed, he was asked why he thought he was fired. (Doc. # 41-7 at 229). He responded that "I think it's political correctness." (*Id.*) He continued, "[i]f you do something wrong, if you say something wrong, if that that [sic.] isn't really a big deal or somebody takes offense to it or you tell the truth, and just because it's a female, it's looked at in a different view." (*Id.*).

Knickmeyer's testimony indicates that he subjectively believes he was fired because of the very misconduct that EJDC maintains he was fired for. Regardless of his belief, the evidentiary record before the court confirms that is the case, as discussed above. Knickmeyer has thus failed

James C. Mahan
U.S. District Judge

to establish the causal link essential to a Title VII retaliation claim, *see Vasquez*, 349 F.3d at 646, and summary judgment will be granted in EJDC's favor.

**IV.     Conclusion**

Defendant has successfully demonstrated that Knickmeyer has failed to establish claims for a hostile work environment, racial discrimination, or retaliation under Title VII. Plaintiff has failed to show that a genuine issue of material fact exists with respect to those claims. Summary judgment will therefore be granted in EJDC's favor on all claims.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant the State of Nevada *ex rel.* Eighth Judicial District Court's motion for summary judgement (doc. # 41) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant the State of Nevada *ex rel.* Eighth Judicial District Court shall submit an appropriate judgment consistent with this order.

DATED March 24, 2016.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 14 -